UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X Docket No.

MARILYN BERNARD,

                              Plaintiff,

        -against-                                    COMPLAINT AND JURY
                                                     DEMAND

JP MORGAN CHASE BANK NA,

                              Defendant.
------------------------------------------------------------------------X

        Plaintiff, by her attorneys, Gabor & Gabor, as and for her Complaint and Jury Demand,

respectfully alleges as follows:


## PARTIES

        1.      At all times relevant hereto, plaintiff, Marilyn Bernard, was and is a resident and

domiciliary of the State of New York, County of Nassau with her principal residence located at

170 Maplewood Avenue, Hempstead, New York 11550.

        2.      At all times relevant hereto, defendant, J.P. Morgan Chase Bank, N.A., referred to

herein as "Chase" is a corporation with offices located at 1 Chase Manhattan Plaza, New York,

New York 10081.


## VENUE AND JURISDICTION

        3.      This is a civil rights action brought by the plaintiff in order to redress multiple

deprivations by the defendant of plaintiff's rights secured by the Constitution of the State of New

1

York, as well as pursuant to 42 U.S.C. 2000e et seq., otherwise known as Title VII of the Civil

Rights Act of 1964, the New York State Executive Law Section 290 et. seq., New York City

Administrative Code § 8-107, and 42 USCS § 1981 and all applicable rules and regulations.

      4.     Jurisdiction is conferred on the Court by 28 U.S.C. 1331 and 28 U.S.C. 1343(a)

and under the doctrine of supplemental and pendent jurisdiction. Venue in the Southern District

of New York is appropriate pursuant to 28 U.S.C. 1391 inasmuch as acts and transactions

constituting violations of the above Acts have occurred in this District.

      5.     The plaintiff filed a complaint with the Equal Employment Opportunity

Commission on February 8, 2008.

      6.     The plaintiff received a Right to Sue letter dated April 17, 2008.

      7.     This action has been commenced within ninety (90) days of receipt of the right to

sue.

      8.     A copy of this federal court complaint has been served upon The New York City

Commission on Human Rights and upon Corporation Counsel.

## NATURE OF THE ACTION

      9.     This is an action brought for monetary damages for pain, suffering, humiliation,

lost wages and other compensation. This is also an action brought for declaratory, injunctive,

equitable and affirmative relief. Exemplary damages, counsel fees and the costs and expenses to

redress the injuries caused by the acts of the Defendant are also sought.

## BACKGROUND AND FACTS

10.    The plaintiff was born on May 29, 1956, and is currently fifty-one (51) years of age.

11.    The plaintiff is an African-American woman.

12.    The plaintiff was hired by Chase on July 15, 1991, to work in its retail line of business. When Bernard's employment was terminated, she was working in New York City.

13.    The plaintiff's career with Chase progressed without incident until the Summer of 2007.

14.    The plaintiff was promoted to Vice President and National Account Representative in 2001. She has been responsible for managing a portfolio of corporate clients to acquire and retain employee consumer accounts. She was also responsible for building and maintaining strategic relationships with company decision makers.

15.    On or about August 1, 2007, Chase hired Christine Tamney as a Senior National Account Representative and Team Leader. Tamney is Caucasian and is approximately ten (10) years younger than the plaintiff.

16.    Travis Rieger was the Regional Sales Manager who was responsible for the region. Rieger is also Caucasian and is more than fifteen (15) years younger than the plaintiff.

17.    From August 20, 2007, until her employment was terminated on January 15, 2008, the plaintiff was repeatedly harassed and threatened by Tamney and Rieger.

18.    On August 20, 2007, the plaintiff was given a verbal counseling by Tamney and Rieger alleging that her numbers were inadequate.

19.    The plaintiff was treated in a disparate manner as compared to other National

3

Account Representatives.

20.     For example, the plaintiff was threatened that if she did not meet her goals that she would lose her job.

21.     Other National Account Representatives did not meet their goals and were not similarly threatened.

22.     In addition, Rieger and Tamney attempted to create the fiction that the plaintiff failed to meet her goals by failing and refusing to consider accounts that the plaintiff had opened. This created the false illusion that the plaintiff failed to meet her goals. This illusion was not supported by the facts.

23.     Tamney and Rieger refused to provide the plaintiff with the same level of support that was given to other employees. In addition, they also failed to advise the plaintiff of important events and policies.

24.     Some National Account Representatives who failed to meet their goals received awards.

25.     The plaintiff was the only African American female member of her team.

26.     There were five (5) teams with a total of approximately twenty (20) members. The plaintiff was the only African American female and one (1) of only two (2) African American National Account Representatives.

27.     In the quarter that ran from July 1, 2007 to September 30, 2007, the plaintiff's numbers measured within the same range as the other members of the team. Chase measures DDA (Day to Day Accounts). The results for the other three (3) members of her team were 5,264, 1,465 and 2,411. The plaintiff's results were 2,304. Clearly, she placed third out of four

4

(4) team members. Her year to date DDA as of the end of the third quarter was 7,037; the other members of her team were 14,412, 6,549 and 3,940. In this category the plaintiff placed second. The year end numbers show that she had 9,504. The other members of her team had 18,184, 4,963 and 8,380. Once again, the plaintiff placed second out of four (4) members of her team. The two (2) members of the team with lower scores were not removed from their positions. Upon information and belief, the plaintiff was approximately fifth out of the twenty (20) National Account Representatives with respect to DDA numbers.

28.    Despite achieving these impressive results, the plaintiff was threatened with termination of her employment while the other members of the team were not threatened at all.

29.    The plaintiff's new client acquisition for the third quarter was ten (10). The goal was fifteen (15) for all members of the teams. No other member of the team came close to this figure; their numbers were 7, 6 and 7.

30.    Including other teams, there were approximately twenty (20) National Account Representatives. No one from the entire NAR Sales team made the fifteen (15) new clients goal for the third quarter. At a recent National Sales meeting, three (3) NARs were recognized for having the highest numbers of new clients for the third quarter. One had twelve (12) new clients and the other two (2) had eleven (11) new clients.

31.    Based upon the foregoing, Chase was rewarding other NARs who failed to meet established goals while the plaintiff was being threatened.

32.    On October 29, 2007, the plaintiff received a written warning. She was advised that this warning was based upon her sales activity during the 3rd quarter of 2007. This warning did not accurately reflect the work that she had performed.

5

33.    The plaintiff was singled out based upon unlawful discriminatory animus.

34.    On November 16, 2007, the plaintiff issued a response to the written warning. In that response, the plaintiff made it clear that she was not given credit for work that had been performed. If the numbers fairly and accurately reflected the work performed by the plaintiff, the defendant would have recognized that she had exceeded first and second quarter DDA goals and was on track for meeting her DDA goals for the third quarter.

35.    On November 30, 2007, the plaintiff met with Tamney as a follow up to her written warning. Tamney told the plaintiff that she was not written up based on DDA numbers but rather on new clients' acquisition numbers.

36.    This was a clear change in direction by Tamney due to the fact that the plaintiff proved that the complaints made to her at the August 20, 2007 meeting and in the written warning were unwarranted.

37.    The plaintiff pointed out that the expectation that was presented to her in August 2007 stated that the plaintiff needed to bring her DDA numbers to at least 70% and new clients acquisition to at least ten (10). The plaintiff advised Tamney that she met both of those expectations. Tamney said that the plaintiff only had nine (9) new clients. The plaintiff advised her that the National Sales Manager recognized and credited the plaintiff with a new account which brought the total to ten (10) new clients.

38.    It had become clear that Tamney wanted to get rid of the plaintiff.

39.    As a result, on December 6, 2007, the plaintiff called Lenor Chester of Employee Relations to explain what was happening. Chester referred the plaintiff to Leila McConnell, a Human Resources Business Partner. Chester said she would contact Leila McConnell and advise

6

her that the plaintiff would be calling regarding her situation.

40.    On December 7, 2007, the plaintiff spoke with McConnell and advised her that she had received a verbal and written warning and that she felt that she was being unfairly treated. The plaintiff read the response that she had given to the written warning after learning that she was not provided with a copy.

41.    McConnell told the plaintiff to question the numbers with respect to DDA and New Client Acquisitions. She also said that the plaintiff should address the fact that Rieger wrongly failed to consider a major account that the plaintiff had secured when artificially lowering the numbers for the third quarter.

42.    McConnell suggested that the plaintiff address these issues with Rieger.

43.    The plaintiff felt that McConnell was not there to assist her.

44.    The plaintiff sought to salvage her career with Chase by requesting that Chase remove the written warning from her file so that she could apply for another position with Chase internally.

45.    The plaintiff made this request to Tamney and advised McConnell of the request.

46.    Tamney told the plaintiff that she would have to check with Human Resources and would get back to the plaintiff.

47.    McConnell said that Tamney never discussed this option with her. McConnell then offered that it was possible that Tamney had spoken with Rieger instead.

48.    Tamney told the plaintiff that the written warning would not be removed from her file even though the failure to remove it would make it impossible for the plaintiff to be approved for another position within Chase.

7

49.    McConnell told the plaintiff that it was possible to remove a written warning from an employee's file so that the employee could obtain another position within the company.

50.    McConnell asked the plaintiff if she could find another position within Chase if she was given sixty (60) days. The plaintiff indicated that she would do her best if given the chance. McConnell then said that sometimes employees were given an extension to find another position.

51.    McConnell told the plaintiff to contact her if she needed any help.

52.    On December 14, 2007, the plaintiff told McConnell that she felt that she was the victim of discrimination and explained her situation in detail.

53.    On December 17, 2007, McConnell said that she spoke with Rieger and that he requested that they discuss the matter at another time.

54.    On December 18, 2007, the plaintiff spoke with McConnell who said that Rieger was not concerned about the plaintiff's DDAs but was now focusing on her activities. He said that the plaintiff did not have the right amount of activities in order to stay in a National Account Representative position. He also claimed that the plaintiff did not have the right skill set to remain in a National Account role.

55.    McConnell told the plaintiff that she should look for another job and should not try to stay somewhere that she was not wanted. She requested a copy of the plaintiff's resume and promised to look for external positions.

56.    The plaintiff was deeply concerned because she had gone to McConnell to complain about disparate treatment and her only solution was to advise the plaintiff to look for another job outside of the company.

8

57.    The plaintiff forwarded McConnell information for two (2) internal positions at Chase that she was interested in but did not hear back from her.

58.    McConnell sent the plaintiff two (2) job postings positions at HSBC.

59.    On January 15, 2008, the plaintiff was terminated from her position at Chase.

60.    For the fourth quarter 2007, the plaintiff's goal was five (5) new clients, five (5) re-launches of existing clients and 2,300 DDAs. The plaintiff's numbers were three (3) new clients, five (5) re-launches and 2,979 DDAs.

61.    For the fourth quarter 2007, the plaintiff's colleagues failed to meet all of their goals.

62.    The plaintiff was singled out and targeted due to her race, gender and retaliation.

63.    The plaintiff was the only Black female and only one (1) of two (2) Blacks out of approximately twenty (20) who held her position in Chase at Work.

64.    The plaintiff was also the victim of retaliation for complaining to Tamney and to McConnell.

## AS AND FOR A FIRST CAUSE OF ACTION
## TITLE VII - WRONGFUL TERMINATION - GENDER

65.    The plaintiff repeats, reiterates and realleges the allegations contained in paragraphs "1" through "64" with the same force and affect as if more fully set forth herein.

66.    The defendant has discriminated against the plaintiff on the basis of plaintiff's gender.

67.    The plaintiff was terminated from her employment with the defendant.

9

68.     The plaintiff's gender was a motivating factor in the decision to terminate her employment.

69.     The plaintiff was wrongfully terminated from her position with the defendant.

70.     The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

71.     The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964.

72.     As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION
## TITLE VII - WRONGFUL TERMINATION - RACE

73.     The plaintiff repeats, reiterates and realleges the allegations contained in paragraphs "1" through "72" with the same force and affect as if more fully set forth herein.

74.     The defendant has discriminated against the plaintiff on the basis of plaintiff's race.

75.     The plaintiff was terminated from her employment with the defendant.

76.     The plaintiff's race was a motivating factor in the decision to terminate her employment.

77.     The plaintiff was wrongfully terminated from her position with the defendant.

78.     The plaintiff has been caused to suffer severe emotional and economic damages as

10

a result of this conduct.

79.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964.

80.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION
## TITLE VII - WRONGFUL TERMINATION - RETALIATION

81.    The plaintiff repeats, reiterates and realleges the allegations contained in paragraphs "1" through "80" with the same force and affect as if more fully set forth herein.

82.    The plaintiff complained that she was treated unfairly due to race and gender.

83.    The plaintiff was terminated from her employment with the defendant.

84.    The plaintiff's complaint of unfair treatment was a motivating factor in the decision to terminate her employment.

85.    The plaintiff was wrongfully terminated from her position with the defendant.

86.    The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

87.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964.

88.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

11

## AS AND FOR A FOURTH CAUSE OF ACTION
## NEW YORK STATE EXECUTIVE LAW - WRONGFUL TERMINATION - GENDER

89.    The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "88" with the same force and affect as if more fully set forth herein.

90.    The defendant has discriminated against the plaintiff on the basis of plaintiff's

gender.

91.    The plaintiff was terminated from her employment with the defendant.

92.    The plaintiff's gender was a motivating factor in the decision to terminate her

employment.

93.    The plaintiff was wrongfully terminated from her position with the defendant.

94.    The plaintiff has been caused to suffer severe emotional and economic damages as

a result of this conduct.

95.    The defendant has discriminated against the plaintiff with respect to her

employment terms, working conditions and privileges of employment in violation of N.Y.

Executive Law § 296 et seq.

96.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS.


## AS AND FOR A FIFTH CAUSE OF ACTION
## NEW YORK STATE EXECUTIVE LAW - WRONGFUL TERMINATION - RACE

97.    The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "96" with the same force and affect as if more fully set forth herein.

98.    The defendant has discriminated against the plaintiff on the basis of plaintiff's race.

99.    The plaintiff was terminated from her employment with the defendant.

100.    The plaintiff's race was a motivating factor in the decision to terminate her employment.

101.    The plaintiff was wrongfully terminated from her position with the defendant.

102.    The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

103.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of N.Y. Executive Law § 296 et seq.

104.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION
## NEW YORK STATE EXECUTIVE LAW - WRONGFUL TERMINATION
### RETALIATION

105.    The plaintiff repeats, reiterates and realleges the allegations contained in paragraphs "1" through "104" with the same force and affect as if more fully set forth herein.

106.    The plaintiff complained that she was treated unfairly due to race and gender.

107.    The plaintiff was terminated from her employment with the defendant.

108.    The plaintiff's complaint of unfair treatment was a motivating factor in the decision to terminate her employment.

13

109.    The plaintiff was wrongfully terminated from her position with the defendant.

110.    The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

111.    The defendant has discriminated against the plaintiff with respect to her employment terms, working conditions and privileges of employment in violation of N.Y. Executive Law § 296 et seq.

112.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.


### AS AND FOR A SEVENTH CAUSE OF ACTION
### NEW YORK CITY ADMINISTRATIVE CODE
### WRONGFUL TERMINATION - GENDER

113.    The plaintiff repeats, reiterates and realleges the allegations contained in paragraphs "1" through "112" with the same force and affect as if more fully set forth herein.

114.    The defendant has discriminated against the plaintiff on the basis of plaintiff's gender.

115.    The plaintiff was terminated from her employment with the defendant.

116.    The plaintiff's gender was a motivating factor in the decision to terminate her employment.

117.    The plaintiff was wrongfully terminated from her position with the defendant.

118.    The plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

119.    The defendant has discriminated against the plaintiff with respect to her

14

employment terms, working conditions and privileges of employment in violation of New York

City Administrative Code § 8-107.

120.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## NEW YORK CITY ADMINISTRATIVE CODE
## WRONGFUL TERMINATION - RACE

121.    The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "120" with the same force and affect as if more fully set forth herein.

122.    The defendant has discriminated against the plaintiff on the basis of plaintiff's

race.

123.    The plaintiff was terminated from her employment with the defendant.

124.    The plaintiff's race was a motivating factor in the decision to terminate her

employment.

125.    The plaintiff was wrongfully terminated from her position with the defendant.

126.    The plaintiff has been caused to suffer severe emotional and economic damages as

a result of this conduct.

127.    The defendant has discriminated against the plaintiff with respect to her

employment terms, working conditions and privileges of employment in violation of New York

City Administrative Code § 8-107.

128.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A NINTH CAUSE OF ACTION

15

## NEW YORK CITY ADMINISTRATIVE CODE
## WRONGFUL TERMINATION - RETALIATION

129.    The plaintiff repeats, reiterates and realleges the allegations contained in

paragraphs "1" through "128" with the same force and affect as if more fully set forth herein.

130.    The plaintiff complained that she was treated unfairly due to race and gender.

131.    The plaintiff was terminated from her employment with the defendant.

132.    The plaintiff's complaint of unfair treatment was a motivating factor in the

decision to terminate her employment.

133.    The plaintiff was wrongfully terminated from her position with the defendant.

134.    The plaintiff has been caused to suffer severe emotional and economic damages as

a result of this conduct.

135.    The defendant has discriminated against the plaintiff with respect to her

employment terms, working conditions and privileges of employment in violation of New York

City Administrative Code § 8-107.

136.    As a result of the defendant's conduct, plaintiff has been damaged in the sum of

FIVE MILLION ($5,000,000.00) DOLLARS.


### JURY DEMAND

137.    Plaintiff demands a jury trial of this action.

**WHEREFORE**, Plaintiff demands judgment as follows:

a)    Declaring that the actions, patterns and practices of the defendant, its agents,

servants and all those acting in concert with them, constituted, and does constitute, a violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.; as amended, the Civil

16

Rights Act of 1991 (Pub. L. 102-166); 42 USC § 1981; the New York State Constitution; the New York State Executive Law Section 290 et seq.; the New York City Administrative Code § 8-107, and all applicable rules and regulations, and common law principals.

     b)     Permanently enjoining the defendant, its agents, servants and all those acting in concert with them, from violating Title VII of the Civil Rights Act of 1964. 42 U.S.C. Section 2000e et seq.; as amended, the Civil Rights Act of 1991 (Pub. L. 102-166): 42 USC § 1981; the New York State Constitution; the New York State Executive Law Section 290 et seq., the New York City Administrative Code § 8-107, and all applicable rules and regulations, and common law principals.

     c)     Awarding damages for economic and emotional injuries as well as interest, costs, disbursements, common law, statutory, compensatory, exemplary and punitive damages, pre-judgment interest, pecuniary and non-pecuniary damages and such other and further relief as to this Court deems just and proper; and

     d)     Awarding counsel fees. costs and disbursements of this action.

Dated: Garden City, New York
       May 16, 2008

                                 Yours etc.,

                                   HOPE SENZER GABOR (HSG7437)
                                   DAVID G. GABOR (DGG 9979)
                                   GABOR & GABOR
                                   Attorneys for Plaintiff
                                   400 Garden City Plaza
                                   Suite 406
                                   Garden City, New York 11530
                                   (516) 248-2525